# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| FAITH ANN ELIAS-VAN DYKE, | 2:06-cv-1000-LDG-LRL |
| Plaintiff, | |
| v. | DECISION |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | |
| Defendant. | |

The parties have submitted this matter to the court to determine whether Defendant Hartford Life and Accident Insurance Company ("Hartford") abused its discretion in denying Plaintiff benefits under the company's disability plan (trial brief #20, response #23, reply brief #27). This opinion shall be construed as findings and conclusions.

Plaintiff claims the plan administrator abused her discretion when she decided that Plaintiff was ineligible for disability benefits because she was not a full-time employee at the time she was injured, as required under the plan's terms, and she did not, according to the plan administrator, meet the definition of totally disabled while covered under the insurance policy. In addition, Plaintiff argues that the plan administrator's decision was influenced by a conflict of interest, as evidenced by a failure of Defendant to adequately investigate the claim and an inconsistency in the reasons given by Defendant for the denial.

The court, in reviewing the plan administrator's decision for abuse of discretion, finds that, for the reasons stated below, Defendant did not abuse its discretion. Furthermore, the court finds no evidence that a conflict of interest influenced the administrator's decision.

I.  Basis for Federal Jurisdiction

Since the disability policy in question concerns an employee benefits program, it is governed by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 ("ERISA"). This court has federal question jurisdiction under 28 U.S.C. § 1331.

II. Background

Plaintiff Elias-Van Dyke was hired by Maximus on April 18, 2005. Plaintiff characterizes her position as a software consultant; Defendant characterizes it as a project manager.

As an employee, Plaintiff was eligible to sign up for employer-sponsored benefits, provided by Hartford. Plaintiff took advantage of the opportunity and enrolled in the program, becoming eligible for the plan's short term disability benefits on May 1, 2005. In order to ensure more coverage should she become disabled, Plaintiff purchased the plan's buy-up policy, paying an extra $24 a pay period to raise her disability coverage to 60% of her salary.

The plan conferred discretion and authority on Hartford to determine eligibility for the benefits and to construe and interpret all the terms in the policy. It also offered disability benefits to individuals who met the definition of totally disabled while covered under the plan, with totally disabled defined as being prevented from performing the essential duties of one's occupation by accidental bodily injury, sickness, mental illness, substance abuse, or pregnancy. The definition also required that, in order to qualify as totally disabled, an individual had to earn less than 20% of the individual's pre-disability earnings.

The plan's benefits for total disability became payable when individuals became totally disabled while covered under the plan. Coverage was terminated when the employee ceased to be an active full-time or part-time employee in an eligible class, which included situations such as

temporary layoffs, work stoppage and leaves of absence.  The Plan defined an active employee as an individual who worked for the employer on a regular basis in the usual course of the employer's business, requiring the employee to work the number of hours in the employer's normal work week, which was designated as 24 hours in the schedule of insurance.

On May 16, 2005, Plaintiff was in a motorcycle accident that left her seriously injured.  As a result, she was unable to work.  However, her employer continued to pay her full salary until June 17, 2005, when she was terminated, for reasons unrelated to this case.  The parties disagree as to when Plaintiff was able to return to work, but she claims that the earliest she returned to work was September 1, 2005.  She filed a claim for disability benefits with Hartford on July 14, 2005.

In a letter dated July 25, 2005, the Defendant declined short-term disability benefits to the Plaintiff.  Defendant specified, as its reason for denial, that Plaintiff had not met the definition of totally disabled while covered under the plan.  Defendant based its decision on the fact that Plaintiff had continued to receive her full income from her employer until she was terminated.  Defendant contends that it was only when Plaintiff was no longer employed by Maximus, and therefore no longer covered under the policy, that she suffered any reduction in salary.

In an August 23, 2005, follow-up letter, Defendant again reiterated that it was denying Plaintiff's claim.  In addition to the previous reason, Defendant noted a new, additional reason for its denial: because Plaintiff was allegedly on "bench status" at the time of her accident and not actively engaged in the oversight of any specific project, Plaintiff was not an active, full-time employee at the time of the accident.  In a final letter dated January 24, 2006, the administrator refused Plaintiff's claim.

Plaintiff disputes Defendant's denial of her claim on two grounds.  First, she claims that she was an active, full-time employee at the time of her accident.  Second, she disputes

1  Defendant's claim that she did not meet the definition of total disability while covered under the
2  plan. The court need address only the second ground.

3  Plaintiff contends that although she did not lose her income due to her disability until after
4  she was let go by Maximus - and therefore no longer covered under the plan - she was employed
5  by Maximus *at the time of the injury*. She contends that the plan administrator should use the time
6  of injury to determine her eligibility for benefits and not the time she incurred an 80% loss of her
7  income. Such an interpretation would result in a determination that Plaintiff was covered by
8  Hartford at the time of her accident.

9  III.     Standard of Review of Administrator's Decision

10  When the plain language of a contract confers discretionary authority on the administrator,
11 the court reviews an administrator's decision to deny benefits using an abuse of discretion
12 standard. *Abatie v. Alta Health and Life Ins. Co.,* 458 F.3d 955, 966-967 (9th Cir. 2006). An
13 abuse of discretion standard is "significantly deferential, requiring a 'definite and firm conviction
14 that a mistake has been made.'" *Snow v. Standard Ins. Co.,* 87 F.3d 327, 331 (9th Cir. 1996)
15 (quoting *Concrete Pipe & Prods., Inc. v. Construction Laborers Pension Trust,* 508 U.S. 602, 623
16 (1993), *overruled on other grounds, Kearney v. Standard Ins. Co.,* 175 F.3d 1084 (9th Cir. 1999)).

17  Plan administrators are said to abuse their discretion when decisions are rendered with no
18 explanation, or provisions are construed in a way that conflicts with the plain language of the plan.
19 *Schikore v. BankAmerica Supplemental Retirement Plan,* 269 F.3d 956, 960 (9th Cir. 2001)
20 (quoting *Eley v. Boeing Co.,* 945 F. 2d 276, 279 (9th Cir. 1991)). Such decisions should only be
21 overturned when they are "so patently arbitrary and unreasonable as to lack foundation in factual
22 basis . . . ." *Oster v. Barco of California Employees' Ret. Plan,* 869 F.2d 1215, 1218 (9th Cir.
23 1988) (citation omitted). An arbitrary and capricious decision is one that is not based on a
24 reasonable interpretation of the plan's terms or was not made in good faith. *Id. (*citing *Johnson v.*
25 *Dist. 2 Marine Engineers Beneficial Assn.-Associated Maritime Officers, Medical Plan,* 857 F.2d
26

4

514, 516 (9th Cir. 1988)). Such a standard does not permit the overturning of a decision "where there is substantial evidence to support the decision," *Snow,* 87 F.3d at 332. Consequently, a plan administrator's interpretation of the provisions of the plan will not be disturbed if reasonable. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101 (1989) *(*the same amount of deference should be given to plan administrators' decisions granted discretionary authority under the plan's terms as that granted to trustees under common trust principles).[1]

IV.     Analysis

Applying the abuse of discretion standard, the court finds that the administrator did not abuse her discretion, as her decision was reasonable, consistent with the plan's terms, and supported by the evidence. Furthermore, there is no indication that the administrator's decision was influenced by a conflict of interest.

The terms of the plan required that an individual applying for short-term disability benefits meet the definition of totally disabled before becoming eligible to receive benefits. The plan defined totally disabled as losing over 80% of an individual's income. It also specified, in the benefits section, that benefits only became payable if an insured became totally disabled *while covered under the plan*. Because Maximus continued to pay Plaintiff's regular salary until she

---

[1]While giving appropriate deference to the administrator's decision, the court may also consider (1) whether an administrator's interest conflicts with that of the beneficiaries, (2) the motives of the administrator in making his or her decision, (3) evidence of malice or self-dealing in the decision-making process, and (4) whether the administrator has a history of parsimonious claims-granting. *Abatie,* 458 F.3d at 968. Furthermore, a court will scrutinize more carefully an administrator's decision when:

> [T]he administrator provides inconsistent reasons for denial . . . , fails adequately to investigate a claim or ask the plaintiff for necessary evidence, . . . fails to credit a claimant's reliable evidence, . . . or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Id.* at 968-969 (citations omitted). Courts can find an administrator's decision unreasonable where there is no evidence upon which the administrator's decision is based. *O'Reilly v. Hartford Life & Accident Ins. Co.,* 272 F.3d 955, 961 (7th Cir. 2001).

5

was terminated, Plaintiff did not lose any percentage of her income while she was still employed by Maximus. In fact, she did not meet the definition of totally disabled until she was no longer covered under the plan. The administrator's denial, then, was consistent with the plan's terms.

Plaintiff also contends that the Defendant gave inconsistent reasons for its denial of coverage, indicating that a conflict of interest influenced the plan administrator's decision. However, the court finds no evidence that the administrator offered inconsistent, rather than multiple, reasons for denial. All three denial letters to the Plaintiff specifically note that the claim was denied because Hartford did not consider Plaintiff to be totally disabled while employed and still covered under the plan. Hartford has never changed from this position: it still serves as the basis for its denial of Plaintiff's claim. The fact that Hartford offered new reasons for its denial *in addition to* its original one does not amount to any inconsistencies.

The Plaintiff further complains that Hartford's investigation was inadequate because the administrator failed to contact her to determine her work status and relied on statements made by her supervisor. ERISA requires that plan administrators have enough evidence to make a reasonable decision. *See O'Reilly v. Hartford Life & Accident Ins. Co.,* 272 F.3d 955, 961 (7th Cir. 2001) ("if [the Defendant] did not have evidence on which to base its conclusion, it would have acted unreasonably"). However, plan administrators aren't required to conduct a "full-blown investigation" - just a reasonable inquiry. *Id.; Gaither v. Aetna Life Ins. Co.,* 388 F.3d 759, 771 (10th Cir. 2004) ("nothing in ERISA requires plan administrators to go fishing for evidence favorable to a claim when it has not been brought to their attention that such evidence exists"); *Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377, 381 (10th Cir. 1992) ("An administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it").

In this case, Plaintiff was placed on notice of Hartford's determination of her work status in Hartford's August 23rd denial letter. Plaintiff, however, did not submit any contrary evidence in response. Furthermore, to assess Plaintiff's work status, Hartford contacted her supervisor, Walter

6

Koch. As Plaintiff's supervisor, Mr. Koch was the appropriate resource for determining Plaintiff's work status. Furthermore, as an employee of Maximus, a company independent of Hartford, he had no apparent interest in the outcome of Plaintiff's claim. Given the opportunity Plaintiff had to submit evidence and the fact that Hartford contacted the most appropriate resource to ascertain Plaintiff's work status, Hartford's investigation was adequate.

Because the court finds that the plan administrator did not abuse her discretion in denying Plaintiff benefits because she did not meet the definition of total disability while still covered under the plan, it is unnecessary for this court to determine whether Plaintiff met the standard of active employment at the time of her accident.

V.   Conclusion

The court will find in favor of Defendant on all issues except regarding the amount of short-term disability insurance premiums paid by Plaintiff as of April 28, 2005. Because Defendant asserts that the Plaintiff was no longer covered under the plan's disability policy at that time, it would be inappropriate for Defendant to retain any premiums it accepted on behalf of the Plaintiff as of that date. Therefore, the court will order that Defendant reimburse Plaintiff the amount of any premiums she paid Defendant for short-term disability coverage as of April 28, 2005, plus pre-judgment interest.

THE COURT HOLDS that the plan administrator's decision is AFFIRMED.

Dated this 26 day of March, 2010.

_____
Lloyd D. George
United States District Judge